77 F.3d 489
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jason Lee HICKEY, a minor, By and Through Donna F. TIMALU
his Guardian ad Litem; Christina Dawn Hickey, a
minor by and through Dorothy O. Hickey,
her Guardian ad Litem,
Plaintiffs-Appellants,
Syndicated Office Systems, dba Central Financial Control,
Claimant-Appellee,
v.
COUNTY OF STANISLAUS, Richard McKay, Sheriffs Captain and
Commander of Stanislaus County Sheriffs Jail Division, Jim
Trevena, Sheriff of Stanislaus County; California Forensics
Medical Group Incorporated, Defendants-Appellees.
 No. 94-15151.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 18, 1995.*
Decided Feb. 20, 1996.
 
 1
 Before: KOZINSKI and NOONAN, Circuit Judges; BREWSTER, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Jason Lee Hickey and Christina Dawn Hickey (the plaintiffs) appeal the district court's grant of summary judgment in favor of California Forensics Medical Group Incorporated (CFMG). We affirm as to the Eighth Amendment claim but reverse the court's decision with regard to the medical malpractice claim.
 
 PROCEEDINGS
 
 4
 On October 22, 1991, the plaintiffs, the children of David R. Hickey (Hickey), filed a complaint against the County of Stanislaus; the County Sheriff, Jim Trevena; the Commander of the County Sheriffs Jail Division, Richard McKay; and CFMG, alleging a violation of 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution in connection with Hickey's death. The complaint also alleged a pendant cause of action for medical malpractice against CFMG. Pursuant to 28 U.S.C. § 1367, the district court exercised its discretion and agreed to consider the Hickeys' pendant malpractice claim. The County and defendants Trevena and McKay reached a settlement with the plaintiffs. On December 20, 1993, the district court granted summary judgment in favor of CFMG and dismissed the complaint. The plaintiffs filed a timely notice of appeal with this court.
 
 FACTS
 
 5
 In 1986, CFMG entered into a contract with Stanislaus County to provide medical care to inmates at the Stanislaus County Correctional Facilities, including the Stanislaus County Jail and Honor Farm. The parties renewed the contract on a yearly basis from 1986 through 1990. CFMG was still providing medical services in the Stanislaus County Correctional Facilities as of May 5, 1994.
 
 
 6
 On September 11, 1990, Hickey was incarcerated at the Stanislaus County Jail for a probation violation. On September 13, 1990, Hickey was moved to the Stanislaus County Honor Farm. On October 21, 1990, he was transported from the Honor Farm to Scenic General Hospital. Doctors at Scenic General had Hickey transferred to Doctors Hospital. He died there on October 24, 1990 as a result of a brain abscess caused by meningitis.
 
 
 7
 Sometime prior to October 1, 1990, Hickey developed sinusitis. On October 1, 1990 at 5:45 PM, he went to see a Nurse Yoppini at the Honor Farm. Hickey's vital signs were taken by Nurse Yoppini, were telephoned to the main jail, and were recorded in the log at the main jail. His temperature was 104 degrees, his pulse was 120, and his respiration was 16. In addition, it was noted that "he can barely get around."
 
 
 8
 Hickey was then transported to the main jail. A nurse's assistant took his vital signs (Temp., 102 degrees; Pulse, 120; Resp., 18), and recorded that Hickey "states head hurts--muscles sore--feels dizzy--feels like he wants to throw up but dosen't--hasn't eaten today--unable--chills...." After taking his vital signs, someone placed Hickey in a drunk tank with newly arrested inmates. Hickey received no food or medical attention while in the drunk tank.
 
 
 9
 Nurse Rosenberger testified that she saw Hickey through the bars of the drunk tank at 8:30 PM. She did not give him a physical and did not take his vital signs. Hickey asked her if he could return to the Honor Farm. He complained of the cockroaches and asked her, "How can anyone recuperate under these conditions?" Nurse Nelson testified that she also saw Hickey on the evening of October 1. Hickey told her that he "felt good," that he did not know what had been wrong with him earlier, and that he wanted to go back to the Honor Farm.
 
 
 10
 Hickey was apparently listed as a part of the main jail population and was scheduled for an examination the next morning. At approximately 10:00 PM, Hickey filled out a written request to return to the Honor Farm. In the request Hickey stated that he was hungry and wished to take a shower.
 
 
 11
 Nurse Practitioner Kelso claimed that she examined Hickey on October 2, 1990 at the main jail. Under the date of October 1, 1990, however, she recorded Hickey's vital signs and the statement that Hickey "states feels great! and wants to return to Honor Farm this AM" on his chart. Nurse Sprague-Bill testified that Kelso did not examine Hickey on October 2, 1990. Sprague-Bill also testified that Kelso did not even work on October 1, 1990. Hickey was sent back to the Honor Farm at 7:30 AM on October 2, 1990. His medical records were not sent with him.
 
 
 12
 Upon his return to the Honor Farm on October 2, 1990, Hickey was made to work seven days a week as a "sewer man." Jail inmates, guards, and nurses testified that Hickey went to see the Honor Farm nurse three to five times and filled out written requests for medical care three to five times between October 2, 1990 and October 20, 1990. There is no record of Hickey receiving any medical care as a result of these reports. Inmates also testified that Hickey filled out a written request for medical care and saw the Honor Farm nurse approximately one week before he died. She gave him two tylenols and sent him back to his barracks.
 
 
 13
 On October 20, 1990, at 6:00 PM, an inmate went to the office at the Honor Farm and reported that Hickey was very sick in his bunk. Two jailers testified that they took Hickey to see Nurse Yoppini, and that she examined him and recorded the results in a medical log book. The jailers also stated that they heard Yoppini advise Hickey to see the 6:00 AM pill call nurse, despite the fact that there was no sick call at the Honor Farm, and sick call at the main jail only occurred on weekdays. (October 20, 1990 was a Saturday.) The log book is now missing, and Yoppini has no memory of Hickey. She apparently did not notice that Hickey failed to report at 6:00 AM. Inmates testified that Hickey was in his bunk, laying in his own vomit and pus, comatose or nearly so.
 
 
 14
 On October 21, 1990, at 10:30 AM, inmates informed jailers that Hickey was ill, that he had collapsed, and that he was weak and could not stand on his own. An hour later, at 11:30 AM, jailers and inmates carried Hickey to a car. He was transported to the main jail. At the jail, someone took his vital signs. His temperature was 104 degrees (at the armpit), pulse 96, and respiration 24. He had pus running out of his nose, and his eyes became fixed. He was transported to Scenic General Hospital. He was comatose. Doctors at Scenic General ordered him transferred to Doctors Hospital. At Doctors, doctors drained 30 cc of pus from Hickey's head, and diagnosed him as having a brain abscess caused by meningitis. He died as a result of the abscess three days later.
 
 
 15
 On October 21, 1990, someone placed an entry dated "October 21, 1990; 6:15 PM late entry" on Hickey's chart after an entry dated "October 21, 1990; 8:15 PM" The entry reads as follows: "Elaine from the Honor Farm called and states inmate was given Ecotrin for low grade temperature, P[ulse] 96 R[espiration] 12." Nurse Elaine Kohler, however, testified that she had no recollection of a call to the Honor Farm with a late entry.
 
 ANALYSIS
 The Eighth Amendment Claim
 
 16
 The district court did not err in dismissing the plaintiffs' Eighth Amendment claim because CFMG cannot be held liable on a theory of respondeat superior. Monell v. Department of Social Services, 436 U.S. 658 (1978); Howell v. Evans, 922 F.2d 712, 724 (11th Cir.1991) (private corporation providing medical services under contract with State Department of Corrections cannot be held liable on a theory of respondeat superior ). Because the plaintiffs failed to name individual staff members as defendants, the staff members' negligence or deliberate misconduct cannot serve as a basis for CFMG's liability on the Eighth Amendment claim.
 
 The Medical Malpractice Claim
 
 17
 In granting summary judgment in favor of CFMG, the district court found that the plaintiffs had failed to provide any evidence of a link between CFMG staff members' conduct and Hickey's death. We disagree. Doctors Abrams and Marzouk testified that CFMG's omissions and acts "more likely than not" caused Hickey's death. Dr. Abrams testified as follows:
 
 
 18
 Q. Do you have an opinion that, more likely than not, Mr. Hickey's death was due to the failure to diagnose the sinusitis on October 2nd, 1990?
 
 
 19
 A. I think more likely than not, yes.
 
 
 20
 Q. So is it fair to say, then, that your opinion is if Mr. Hickey was diagnosed with sinusitis on 10/2/90, that this would have prevented his demise?
 
 
 21
 A. More likely than not, yes.
 
 Dr. Marzouk testified as follows:
 
 22
 Q. Is it fair to say that your opinion is that, more likely than not, up until 10/20/90 if David Hickey was correctly diagnosed and provided with the medical care and treatment which you just explained, that that would have prevented his death?
 
 
 23
 A. Yes, more likely than not, he would have survived.
 
 
 24
 Whether a fact finder would ultimately believe the two doctors is not at issue; that the plaintiffs presented an issue of fact on the element of causation appears clear.
 
 
 25
 Accordingly, we AFFIRM the judgment as to the Eighth Amendment claim, and REVERSE the district court's grant of summary judgment and dismissal as to the medical malpractice claim. As the case remains within the district court's supplemental jurisdiction, 28 U.S.C. § 1367, we remand for further proceedings on Hickey's medical malpractice claim.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 The Honorable Rudi M. Brewster, United States District Judge, Southern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3